**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TALOR LAFFERTY**, | ) | |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| **vs.** | ) | Case No: |
| | ) | |
| **BURRELL, INC. d/b/a BURRELL** | ) | |
| **BEHAVIORAL HEALTH** | ) | **JURY TRIAL DEMANDED** |
| Serve Registered Agent: | ) | |
| C T Corporation System | ) | |
| 5661 Telegraph Rd. Ste 4B | ) | |
| St. Louis, MO 63129 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Talor Lafferty, by and through the undersigned counsel, states and alleges as follows for her Complaint for Damages against Defendant Burrell Behavioral Health

## INTRODUCTION

1. The claims in this Complaint arise out of Plaintiff's employment with Defendant.

2. In violation of the Missouri Human Rights Act ("MHRA") and Title VII of the Civil Rights Act of 1964, Plaintiff was subjected to unlawful discrimination and harassment based on her female sex, and was retaliated against for her opposition to unlawful discrimination and retaliation.

3. Plaintiff seeks all available remedies under federal and Missouri law, including but not limited to compensatory and punitive damages to the extent allowed by applicable laws.

## PARTIES

4. Plaintiff, **Talor Lafferty**, is and was at all times relevant to the allegations herein, a female resident of Missouri.

5. Defendant, **Burrell, Inc. d/b/a Burrell Behavioral Health**, is a Missouri non-profit corporation that provides services and conducts business in the State of Missouri

6. Defendant is and was at all times relevant to the allegations contained herein, an "employer" as the term is defined under the Missouri Human Rights Act (MHRA) and Title VII of the Civil Rights Act of 1964 ("Title VII").

7. Defendant is and was at all times relevant to the allegations herein a "place of public accommodation" as the term is defined in the MHRA.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the matter involves questions of federal law.

9. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. Jurisdiction is proper over this Defendant because it provides services and conducts business in the State of Missouri, and the alleged acts, omissions, and tortious conduct giving rise to the claims alleged herein were committed by the Defendant in the State of Missouri, specifically in Greene County.

11. Venue is proper in this Court because the alleged acts, omissions, and tortious conduct occurred while Plaintiff was working for Defendant in Greene County, Missouri.

**CONDITION PRECEDENT**

12. On or about February 11, 2025, Plaintiff filed a Charge of Discrimination against the Defendant with the Missouri Commission on Human Rights ("MCHR"), which was dually filed with the Equal Employment Opportunity Commission ("EEOC"). *A true and accurate copy of the Charge is attached hereto as **Exhibit A** and incorporated by reference.*

13. On or about September 17, 2025, Plaintiff filed a Charge of Discrimination against the Defendant with the Missouri Commission on Human Rights ("MCHR"), which was dually filed with the Equal Employment Opportunity Commission ("EEOC"). *A true and accurate copy of the Charge is attached hereto as **Exhibit B** and incorporated by reference.*

14. On or about December 30, 2025, the MCHR issued its Notice of Right to Sue pursuant to the Missouri Human Rights Act. *A true and accurate copy of the Notice is attached hereto as **Exhibit C** and incorporated herein by reference.*

15. On or about January 13, 2026, the Equal Employment Opportunity Commission issued its Notice of Right to Sue. *A true and accurate copy of the Notice is attached hereto as **Exhibit D** and incorporated herein by reference.*

## FACTUAL ALLEGATIONS

16. From September 18, 2023 through the end of March 2025, Plaintiff was employed by Defendant in a Certified Peer Support (CPS) position.

17. Shortly after Plaintiff started her employment, through May of 2024, Plaintiff was harassed and bullied by three female employees.

18. Plaintiff made several complaints about the harassment and bullying but nothing was done to stop it.

19. In March 2024, Amanda March, who held the position of House Supervisor, was hired.

20. She brought several employees from her previous place of employment to Burrell with her.

21. In June 2024, Amanda began making inappropriate and unwelcome sexual and romantic advances directed at Plaintiff.

22. Amanda would send Plaintiff inappropriate text messages to her personal phone, and would send her photos and playlists.

23. Amanda also left poems, letters and necklaces in Plaintiff's office during work hours.

24. On more than one occasion, Amanda called Plaintiff and spoke on the phone to her about inappropriate topics and while in the present of clients.

25. Amanda once came into Plaintiff's office, locked the door, and straddled her while Plaintiff was sitting down.

26. Plaintiff was aware that she had also straddled at least one other employee in a similar manner because Plaintiff was sent a photo of it.

27. More specifically, Amanda often talked about how they have an "intimate friendship" despite that Plaintiff repeatedly told her she was not interested in her or being intimate with her.

28. On more than one occasion, Amanda tried to convince Plaintiff that she was a lesbian, and "just didn't know it yet."

29. On October 28, 2024, Plaintiff had a scheduled one-on-one meeting with Valerie Callison, the Certified Peer Support and Certified Community Support Supervisor, and Plaintiff's direct supervisor.

30. In the one-on-one meeting on October 28, 2024, Plaintiff reported the sexual harassment.

31. Following that meeting, Valerie reported the incident to the Human Resources department.

32. Thereafter, Plaintiff met with the Director, PD, and Valerie to further report the sexual harassment.

33. On October 31, 2024, Plaintiff met with Human Resources and a compliance department representative to tell them about the sexual harassment and to show them the letters, poems and texts Amanda had sent. Amanda was immediately suspended without pay.

34. On or about November 7, 2024, Defendant sent a mass email out to employees notifying them that Amanda had been fired.

35. In addition to the several employees Amanda brought with her to Burrell, she had many other friends within the company, including Director Amanda Mays.

36. Following her termination, many employees who were friends with, or close to Amanda March, were upset about her termination.

37. Several employees began creating a hostile work environment for Plaintiff.

38. On the day Amanda March was fired, one of the employees Amanda had brought with her from her former company, Dalton, put a trophy in Plaintiff's office and told her that it was from Amanda. Plaintiff gave the trophy to the Human Resources department immediately.

39. On November 14, 2024, Valerie falsely accused Plaintiff of billing for services Plaintiff was not supposed to charge for. When Plaintiff spoke with her about it, Valerie changed her tone and said, "I'm just a little worried that everything you do is being watched."

40. On November 19, 2024, Valerie hired an evening CPS after Plaintiff had been working to cover those hours for more than a year.

41. Before she hired the person, Plaintiff expressed concern that it would impact her compensation and ability to attain bonuses. Valerie told her that they would "sort it all out."

42. On November 22, 2024, Valerie and Ryan Shepherd, Counseling Supervisor, told Plaintiff that they had received an anonymous report that Plaintiff called a client a "bitch."

43. Plaintiff did not call a client a "bitch". Instead, Tiffany, a counselor with

the company, had done so.

44. After being treated with hostility for more than a month, Plaintiff asked if she could be transferred to a different building to escape the hostile and retaliatory work environment.

45. On December 15, 2024, Joseph, Assistant Director, spoke to Plaintiff about "not telling kids their medicine is dangerous," something which Plaintiff had not done.

46. On information and belief, Joseph was making the comment in reference to an incident on December 11, 2024, where Plaintiff advocated for a client to the nurses in the facility when the client had a seizure due to being overmedicated.

47. On January 6, 2025, Plaintiff had another meeting with Valerie where she told her Plaintiff was "amazing" and that she "appreciate[s] everything [she does] here."

48. During the meeting, Plaintiff asked her if there were any areas of improvement Plaintiff should be working on, and she replied, "no."

49. They also spoke about the upcoming new work schedule.

50. Valerie told Plaintiff that the work schedule that would be released soon would "be fair this time."

51. When the new schedule came out the next day, Plaintiff noticed her groups had been cut in half while another CPS, Jordan White, received more groups.

52. If Plaintiff did not have enough groups, it impacted her productivity and ability to receive bonuses.

53. Because her groups had been cut, Plaintiff told Valerie that Plaintiff had to decline taking a shift Valerie asked her to take, and Plaintiff told her it was because she

needed groups to avoid being written up for lack of productivity.

54. On January 8, 2025, Plaintiff emailed Human Resources to report that Plaintiff felt she was being retaliated against since reporting the sexual harassment by Amanda.

55. On January 13, 2025, Ryan requested a meeting with her and other management.

56. Plaintiff assumed the meeting was to discuss the email Plaintiff had sent about the retaliation, but it was not.

57. When Plaintiff arrived, Valerie and other management told her the meeting was an "informal coaching" session for alleged general rudeness to staff and other alleged unethical conduct.

58. When Plaintiff asked for specifics about the alleged rudeness, no one would provide her with any details or examples.

59. Plaintiff was told she must participate in additional training and her refusal to do so could result in termination.

60. In the last three minutes of the meeting, Plaintiff was told that the informal coaching would go on record with the company, which would retroactively remove the bonus Plaintiff earned last quarter and that Plaintiff would no longer be eligible for job transfers.

61. Before this meeting and before her complaints of sexual harassment, Plaintiff had never received any performance counseling, write ups or discipline, and Plaintiff was often complemented on her work ethic.

62. Thereafter, Plaintiff was written up for alleged insubordination (based on purportedly rude facial expressions), an alleged privacy violation, an alleged undocumented complaint about discussing medications with a client, and co-workers allegedly feeling "threatened" by her.

63. Plaintiff was also told that they conducted an exit interview with an employee, and the main topic of discussion was that Plaintiff was rude.

64. None of these allegations against Plaintiff were true and the write-ups were in retaliation for her complaints of discrimination and sexual harassment.

65. Additionally, many of the employees treated Plaintiff with hostility and did things to sabotage her ability to do her job following her complaints of sexual harassment.

66. In the month before Plaintiff made the report of sexual harassment, Valerie "commended" her for her hard work and called her a "rockstar."

67. Plaintiff was promoted within two months of beginning her position with Defendant.

68. In the previous work year, Plaintiff received the highest incentive possible and exceeded expectations on performance reviews.

69. As a result of the ongoing retaliation, Plaintiff was forced to resign her employment, and therefore constructively discharged, due to the hostile, retaliatory environment to which she was subjected that was so intolerable any reasonable person would feel compelled to resign.

70. As a result of the discrimination and retaliation, Plaintiff suffered and will continue to suffer emotional distress and lost income and benefits.

## COUNT I

**Missouri Human Rights Act – Sex Discrimination and Harassment**
**R.S.Mo. § 213.055**

71. Plaintiff incorporates by reference every other allegation in this Complaint as though fully set forth herein.

72. Defendant intentionally discriminated against and harassed Plaintiff on the basis of her female sex.

73. Defendant's discrimination and harassment toward Plaintiff on the basis of her female sex, including by House Supervisor Amanda March as described herein, was ongoing, severe, pervasive, and created a hostile work environment that affected the terms, conditions, compensation, and/or privileges of her employment.

74. Defendant knew or should have known of the sex discrimination and harassment suffered by Plaintiff and failed to take prompt remedial action designed to stop the unlawful discrimination and harassment.

75. As a result of the severe and pervasive sex discrimination and harassment, and hostile work environment to which Plaintiff was subjected, Plaintiff has suffered emotional distress, and lost wages and benefits.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of the Complaint, for a finding that she has been subjected to unlawful discrimination and harassment as prohibited by R.S.Mo. § 213.055, for an award of compensatory damages, for her costs expended, reasonable attorneys' fees, and for such further and equitable relief as this Court deems just and proper.

**<u>COUNT II</u>**
**<u>Sex Discrimination and Harassment</u>**
**(Violation of Title VII, 42 U.S.C. § 2000e *et seq*.)**

76. Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs as though fully set forth here.

77. During the course and scope of Plaintiff's employment, Defendant's representatives, while acting in the course and scope of their employment, engaged in a pattern and practice of discrimination against Plaintiff based on her female sex.

78. Defendant's discrimination and harassment toward Plaintiff on the basis of her female sex, including by House Supervisor Amanda March as described herein, was ongoing, severe, pervasive, and created a hostile work environment for Plaintiff.

79. The actions of Defendant were discriminatory and harassing, and constitute a disparity in treatment toward Plaintiff, as a female employee, and on the basis of her female sex, as to the terms, conditions and privileges of employment, and constitute unlawful employment practices in violation of Title VII.

80. As a result of the severe and pervasive sex discrimination and harassment, and hostile work environment to which Plaintiff was subjected, Plaintiff has suffered emotional distress, and lost wages and benefits.

81. Defendant's conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

82. Defendant knew or should have known of the sex discrimination and harassment suffered by Plaintiff and failed to take prompt remedial action designed to stop the unlawful discrimination and harassment.

83. As a result of Defendant's alleged discriminatory conduct, acts, and omissions Plaintiff has incurred and will continue to incur lost wages and benefits.

84. At all times mentioned herein, the above referenced perpetrators and/or other employees, were employees, agents and servants of Defendant and were at all such times acting within the course and scope of their employment with Defendant, and/or their actions were expressly authorized by Defendant, making Defendant liable under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §2000e *et seq.;* for an award of compensatory damages, including lost wages, lost benefits and emotional distress damages; for an award of punitive damages; pre-judgment and post judgment interest as provided by law; for her costs expensed and reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT III
## Sex Discrimination and Harassment in Public Accommodations
## MHRA – R.S.Mo. § 213.065, *et seq*.

85. Plaintiff incorporates by reference each and every other paragraph as though fully set forth herein.

86. Defendant owned, operated, and/or managed Burrell Behavioral Health, which is a business and place of public accommodation as defined in the MHRA.

87. Plaintiff was subjected to sexual harassment at Defendant's business as alleged herein.

88. The sexual harassment occurred on the basis of Plaintiff's sex and constitutes discrimination and harassment on the basis of her sex and is specifically prohibited by the Missouri Human Rights Act.

89. Defendant knew or should have known of the sex discrimination and harassment suffered by Plaintiff and failed to take prompt remedial action designed to stop the unlawful discrimination and harassment.

90. Plaintiff was deprived of the full, free, and equal use and enjoyment of Defendant's place of public accommodation by way of Defendant's actions and omissions.

91. As a result of the severe and pervasive sex discrimination and harassment, Plaintiff has experienced significant emotional distress which has manifested itself in ways including but not limited to humiliation, embarrassment, fear, anguish, and stress.

92. Plaintiff seeks compensation for the emotional distress, and lost wages and benefits she has suffered.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint for Damages, for a finding that she has suffered sex discrimination and/or harassment in a place of public accommodation in violation of the Missouri Human Rights Act; for an award of compensatory damages; for her costs expended; for her reasonable attorneys' fees; and for such other relief as this Court deems just and proper.

**COUNT IV**
**Title VII – Retaliation**
**42 U.S.C. § 2000e et seq.**

93. Plaintiff incorporates by reference all other allegations of this Complaint as if fully set forth herein.

94. Plaintiff engaged in protected activity by reporting and opposing unlawful discrimination and harassment based on sex, in ways including, but not limited to:

a. complaining to Defendant in October 2024 about the ongoing, severe, pervasive sexual harassment she endured from her supervisor, Amanda March; and

b. complaining to Defendant in January 2025 about the retaliation she was experiencing as a result of her sexual harassment complaints about Amanda March.

95. Defendant retaliated against Plaintiff, at least in part, by reason of her opposition to unlawful sex discrimination/harassment, in ways including but not limited to:

a. Subjecting Plaintiff to ongoing, severe, pervasive discrimination harassment on the basis of her female sex;

b. Unreasonably refusing Plaintiff's transfer request;

c. Making false accusations against Plaintiff;

d. Cutting Plaintiff's groups such that her productivity and ability to earn bonuses would be negatively impacted;

e. Issuing Plaintiff unwarranted criticisms, coachings, write-ups and other discipline;

f. Sabotaging Plaintiff's ability to do her job; and

g. Creating hostile working conditions that were so intolerable any reasonable person would feel compelled to resign, and Plaintiff was forced to resign.

96. Defendant violated federal law which prohibits retaliation for opposing unlawful discrimination/harassment.

97. At the time Defendant retaliated against Plaintiff, Defendant knew such retaliation was unlawful.

98. Defendant's retaliatory actions against Plaintiff have caused her damages, including but not limited to lost wages and benefits, and emotional distress.

99. The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to damages from Defendant, to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. §2000e *et seq.*; for an award of compensatory damages; equitable relief; for costs expended; for reasonable attorneys' fees provided by 42 U.S.C. § 2000e-5k, and for such other relief as this Court deems just and proper.

**<u>COUNT V</u>**
**Missouri Human Rights Act – Retaliation**
**R.S.Mo.§ 213.010 *et seq.***

100. Plaintiff incorporates by reference every other paragraph of this Complaint as if fully set forth herein

101. Plaintiff had a good-faith, reasonable belief that Defendant was engaging in unlawful employment practices, including violations of laws prohibiting sex discrimination.

102. Plaintiff engaged in protected activities and reported to Defendant her opposition to these unlawful practices, and otherwise opposed adverse and discriminatory treatment by Defendant, in ways including, but not limited to:

a. complaining to Defendant in October 2024 about the ongoing, severe, pervasive sexual harassment she endured from her supervisor, Amanda March; and

b. complaining to Defendant in January 2025 about the retaliation she was experiencing as a result of her sexual harassment complaints about Amanda March.

103. Defendant retaliated against Plaintiff because of her opposition to its unlawful employment practices in the terms, conditions, compensation, and/or privileges of his employment, in ways including but not limited to:

a. Subjecting Plaintiff to ongoing, severe, pervasive discrimination harassment on the basis of her female sex;

b. Unreasonably refusing Plaintiff's transfer request;

c. Making false accusations against Plaintiff;

d. Cutting Plaintiff's groups such that her productivity and ability to earn bonuses would be negatively impacted;

e. Issuing Plaintiff unwarranted criticisms, coachings, write-ups and other discipline;

f. Sabotaging Plaintiff's ability to do her job; and

g. Creating hostile working conditions that were so intolerable any reasonable person would feel compelled to resign, and Plaintiff was forced to resign.

104. Plaintiff's opposition to Defendant's unlawful employment practices was a motivating factor in its decision to retaliate against her in the terms, conditions, compensation, and/or privileges of her employment.

105. Defendant failed to make good-faith efforts to enforce policies to prevent retaliation against its employees, including Plaintiff.

106. As a direct and proximate result of Defendant's continuing pattern and practice of illegal retaliation directed toward her and/or disparate treatment of her, and of Plaintiff's constructive discharge from employment, Plaintiff has suffered actual damages in the form of lost wages and benefits, pain and suffering, emotional distress, humiliation, upset, deprivation of civil rights, and in other respects, all in an amount that the jury deems fair and reasonable.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count V of her Complaint, for a finding that she has been subjected to unlawful conduct prohibited by

R.S.Mo. § 213.055 *et seq*., for an award of compensatory damages, for her costs expended, for reasonable attorneys' fees, and for any further relief the Court deems just and proper.

**COUNT VI**
**Retaliation in Place of Public Accommodations**
**MHRA – R.S.Mo. § 213.065, *et seq*.**

107. Plaintiff hereby incorporates by reference each and every other paragraph alleged in this Complaint as though fully set forth herein.

108. Defendant is a Missouri business and place of public accommodation as defined in the MHRA.

109. Plaintiff engaged in protected activities and reported to Defendant her opposition to Defendant's unlawful sex discrimination and harassment, and otherwise opposed adverse and discriminatory treatment by Defendant, in ways including, but not limited to:

a. complaining to Defendant in October 2024 about the ongoing, severe, pervasive sexual harassment she endured from her supervisor, Amanda March; and

b. complaining to Defendant in January 2025 about the retaliation she was experiencing as a result of her sexual harassment complaints about Amanda March.

110. Defendant retaliated against Plaintiff on the basis of her opposition to its unlawful employment practices in the terms, conditions, compensation, and/or privileges of his employment specifically prohibited by the MHRA, in ways including but not limited to:

a. Subjecting Plaintiff to ongoing, severe, pervasive discrimination harassment on the basis of her female sex;

b. Unreasonably refusing Plaintiff's transfer request;

c. Making false accusations against Plaintiff;

d. Cutting Plaintiff's groups such that her productivity and ability to earn bonuses would be negatively impacted;

e. Issuing Plaintiff unwarranted criticisms, coachings, write-ups and other discipline;

f. Sabotaging Plaintiff's ability to do her job; and

g. Creating hostile working conditions that were so intolerable any reasonable person would feel compelled to resign, and Plaintiff was forced to resign.

111. Plaintiff was deprived of the full, free, and equal use and enjoyment of Defendant's place of public accommodation by way of Defendant's unlawful actions and inactions.

112. As a result of the discrimination/retaliation, Plaintiff has suffered lost wages and benefits, and experienced emotional distress which has manifested itself in ways including but not limited to humiliation, embarrassment, fear, anguish, and stress, and other damages.

113. Plaintiff seeks compensatory damages for the lost wages and benefits, emotional distress, and other damages she has experienced.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count VI of her Complaint, for a finding that she has suffered discrimination/retaliation in a place of public accommodation in violation of the Missouri Human Rights Act; for an award of compensatory damages to the extent permitted by applicable law; for her costs expended; for her reasonable attorneys' fees if she is a prevailing party; and for such other relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all counts alleged herein.

Respectfully submitted,

**HOLMAN SCHIAVONE, LLC**

By: */s/ Kathleen E. Mannion*
Anne Schiavone, MO Bar #49349
Kathleen E. Mannion, MO Bar #63992
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com
kmannion@hslawllc.com
**ATTORNEY FOR PLAINTIFF**